CLUB VALENCIA HOMEOWNERS AS-SOCIATION, INC., a Colorado corporation, P.J. Scardino, Robert J. Kruse-mark, and Robert Fitzgerald, Plaintiffs-Appellees,

v.

VALENCIA ASSOCIATES, a General Partnership, Defendant-Appellant.

and

VALENCIA ASSOCIATES, a General Partnership, Plaintiff-Appellant,

v.

PODOLL AND PODOLL, P.C., Defendant-Appellee.

Nos. 83CA0528, 83CA1398.

Colorado Court of Appeals, Div. III.

April 4, 1985.

As Modified on Denial of Rehearing Oct. 3, 1985.

Certiorari Denied (Valencia) Jan. 21, 1986.

Podoll & Podoll, P.C., Richard B. Podoll, Robert C. Podoll, Denver, for plaintiffs-appellees and defendant-appellee.

James R. Benson, P.C., James R. Benson, Jr., Denver, for Valencia Associates.

METZGER, Judge.

Defendant Valencia Associates, a General Partnership (Valencia) appeals the trial court's judgment (1) dismissing its counterclaim for fraud against plaintiffs, Club Valencia Homeowners Association, Inc. (association), P.J. Scardino, Robert J. Krusemark, and Robert Fitzgerald (three individual homeowners) and (2) dismissing its libel claim against Podoll and Podoll, P.C., the association, and P.J. Scardino. We affirm.

In March 1982, the association and three individual homeowners sued Valencia seeking damages resulting from alleged breaches of implied and express warranties relating to the sale of condominium units at Club Valencia. Shortly thereafter, Richard Podoll, an attorney representing the association, wrote a letter jointly with the association to its members advising them of the existence of the lawsuit, and requesting that the causes of action belonging to the individual homeowners be assigned to the association. The letter stated in pertinent part:

> "As you may be aware, at the time Valencia Associates transferred control of the Club Valencia Homeowner's Association it became apparent that there were

substantial sums of money unaccounted for, substantial problems with the common elements of the Club Valencia Condominiums which had not been disclosed to the unit owners, and considerable maintenance and repair which Valencia Associates had not undertaken.

After several months of negotiation Valencia Associates did make an offer to the Club Valencia Homeowner's Association which, considering the magnitude of the problems which exist was deemed unacceptable by the Homeowner's Association. As a result, civil litigation was commenced to seek redress from Valencia Associates for the defects, deficiencies and missing sums of money to which the Homeowner's Association is entitled."

In October 1982, Valencia filed a counterclaim against the individual homeowners, based on their misrepresentations of intent to disclaim warranties when they purchased the condominium units at Club Valencia. Valencia also filed a separate action for libel against Podoll, alleging that he maliciously published his March 1982 letter to the Club Valencia homeowners. This libel claim was asserted against the association and P.J. Scardino by means of a counterclaim in the initial action.

The trial court dismissed Valencia's counterclaim in March 1983, and held that the homeowners' execution of the warranty disclaimer and agreement to purchase the condominium units in an "as is" condition were not misrepresentations that could constitute the basis of a fraud claim. It also granted defendant Podoll's C.R.C.P. 12(b)(5) motion to dismiss on the basis that the statements in the March 1982 letter to the homeowners were absolutely privileged. Valencia's motion to consolidate both cases was granted in May 1983, and this appeal followed after the trial court's C.R.C.P. 54(b) certifications.

## I.

Valencia first argues that the purchase contracts and disclosure statements signed and delivered by the individual home-owners disclaimed all warranties expressed and implied and that, therefore, the homeowners made false representations of material existing facts regarding their intention to disclaim all warranties and purchase the condominium units "as is" by later filing suit. We disagree.

The disclosure statement provides, in pertinent part:

"Purchaser acknowledges and agrees that he is purchasing the above described condominium 'as is' and that seller has made no representations, warranties expressed or implied, or warranties as to fitness or condition of said condominium unit."

The purchase agreement provides, in pertinent part:

"Purchaser acknowledges that seller did not construct the improvements being converted to condominium ownership and that the same are approximately seven (7) years old. Purchaser acknowledges that in the event he purchases the condominium unit hereinabove described that he shall purchase the same in an 'as is' condition without any warranties, express or implied, or warranties as to the fitness or condition of the condominium unit purchased or any or all of the general common elements comprising said condominium unit. Purchaser acknowledges that it is the intent of purchaser and seller that purchaser is purchasing said condominium unit and any undivided interest in the common elements appurtenant thereto in it current condition and state of repair and without any warranties in regard to the fitness or habitability of said condominium unit or common elements."

■ In order to sustain an action for fraud, there must be an allegation of a misrepresentation of fact, and that such representation was known to be untrue by the party making it, or else that it was recklessly made. The misrepresentation must be made with the intent to deceive and for the purpose of inducing the other party to act upon it, and there must be evidence that the other party did in fact

rely on it and was induced thereby to act to his injury or damage. *Knight v. Cantrell,* 154 Colo. 396, 390 P.2d 948 (1964).

■ Valencia contends that the homeowners, by signing contracts of sale containing warranty disclaimers, in effect promised not to sue Valencia for breach of warranty. Valencia misconstrues this disclaimer, for it is a disclaimer by the seller, Valencia, not by the buyers. The buyers' signatures constitute an acknowledgement of the seller's disclaimer. These signatures are not promises or representations by the buyers that would limit or preclude later suit and thus, cannot be the basis of a claim for fraud. Accordingly, we conclude that the trial court properly dismissed this claim.

## II.

Valencia also contends that the trial court erred in dismissing its libel claim against Podoll and Podoll, P.C., Scardino, and the association. Valencia asserts that the letter was libelous *per se* because it imputed the crime of embezzlement or fraud to Valencia, and it defamed and injured its reputation for honesty and integrity in business matters. Valencia further asserts that the defamatory statements were not absolutely privileged since the statements were not sufficiently related to existing judicial proceedings. We disagree.

■ The determination of privilege is a question of law for the trial court. *Larmour v. Campanale,* 96 Cal.App.3d 566, 158 Cal.Rptr. 143 (1979). Restatement (Second) of Torts § 586 (1977), adopted in Colorado in *Renner v. Chilton,* 142 Colo. 454, 351 P.2d 277 (1960) states:

"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

The purpose of this privilege, as described in Restatement (Second) of Torts § 586 comment a (1977), is to afford litigants the utmost freedom of access to the courts to preserve and defend their rights and to protect attorneys during the course of their representation of clients. *Smith v. Hatch,* 271 Cal.App.2d 39, 76 Cal.Rptr. 350 (1969).

■ To be privileged, the alleged defamatory matter must have been made in reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it. Restatement (Second) of Torts, § 586 comment C (1977); *Sussman v. Damian,* 355 So.2d 809 (Fla.App.1977). The pertinency required is not technical legal relevancy, but rather a general frame of reference and relation to the subject matter of the litigation. *Smith v. Hatch, supra.* Thus, the privilege embraces anything that possibly may be relevant. *Feldman v. Bernham,* 6 App.Div.2d 498, 179 N.Y.S.2d 881 (1958).

As well, the maker of the statement and the recipient must be involved in and closely connected with the proceeding. Thus, an attorney's publication of defamatory statements that are plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant to the litigation, would not be privileged. *Moore v. Manufacturer's National Bank,* 123 N.Y. 420, 25 N.E. 1048 (1890).

■ The absolute privilege to defame in the course of judicial proceedings is not limited to statements during trial, but may extend to steps taken prior to trial such as conferences and other communications preliminary to the proceeding. *Lerette v. Dean Witter Organization, Inc.,* 60 Cal. App.3d 573, 131 Cal.Rptr. 592 (1976).

■ All doubt should be resolved in favor of its relevancy or pertinency. No strained or close construction will be indulged to exempt a case from the protection of privilege. *Chard v. Galton,* 277 Or.

109, 559 P.2d 1280 (1977). Thus, letters sent to persons having collateral interests in the litigation are privileged to the extent that the alleged defamatory statements have some relation to the subject matter of the proposed litigation and are made in furtherance of the objective of the litigation. *See generally*, Annot., 23 *A.L.R.* 4th 935 (1983).

■ Valencia argues that none of the recipients here were connected with the lawsuit. That contention is misplaced, however, since a lawsuit involving the homeowners' association would undoubtedly involve the interests of individual homeowners. *See Conestoga Pines Homeowners' Association, Inc. v. Black*, 689 P.2d 1176 (Colo.App.1984). The Club Valencia homeowners had a real interest in the developing controversy and in the suit against Valencia for recovery of unaccounted-for monies, and for maintenance and repair costs. The letter was written in preparation of the judicial proceedings, it bore a logical relationship to those proceedings, it was in furtherance of the homeowners' objectives, and it was prepared by defendant Podoll, an attorney participating in the proceedings.

The privilege applies, even though the publication was made outside the courtroom and no official function of the court or its officers was invoked. The publication was made in the course of a judicial proceeding to achieve the objects of the litigation, and had a reasonable relation to the action. Accordingly, we hold that the letter was absolutely privileged and the libel claim was properly dismissed by the trial court.

Judgment affirmed.

ENOCH, C.J., and BABCOCK, J., concur.